Jean Paul Lauren
1325 N. 15th Ave., Apt#102
Bozeman, Montana 59715
406-581-1525
swimyoga@gmail.com



RECEIVED
AUG 24 2017
CLERK, U.S. DISTRICT COURT
DISTRICT OF MONTANA
BUTTE

Plaintiff, representing self

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### BUTTE, DIVISION

| | |
|---|---|
| **Jean Paul Lauren,** | ) |
| | ) Cause No. |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) Complaint |
| | ) |
| **Montana State University** | ) |
| **John Paxton** | ) |
| **Brenda York** | ) |
|     **Defendants** | ) |

This lawsuit is being filed because JP was not allowed to continue his PhD studies in the fall of 2015 even though he had a 3.8 GPA on 45 PhD credits. Essentially JP was not given appropriate accommodations and his disabilities were not understood with MSU making inappropriate requirements. MSU demonstrated incompetence and in some cases animosity toward JP even though he had demonstrated success in his PhD program.

We are suing for damages of legal penalties, tuition and expenses, lost income, defamation, pain and suffering, contractual failure, and other.

To summarize the history briefly, JP started his PhD the summer of 2007 with the computer science department and MSU disability group welcoming him by providing space in the CS graduate school bullpen and a computer, along with a CS adviser. JP had interviewed for a job in the department in May of 2006 and was known to the chairman of CS and many of the professors who had interviewed him. He was welcomed with open arms. He began work on his dissertation in the fall of 2007 with research credits approved by his adviser and department head.

Later that semester a new chairman, John Paxton took over the department. At that time in January of 2008, he met with all of the PhD students and globally reduced the course requirements for all of the PhD students, including JP. It was at this time that JP began to not get support from Paxton and the CS department. In fact, the department through JP's adviser and chairman Paxton, asked JP to look at moving to another department. From this point on, JP was given additional requirements and intimidated to discourage his continued studies in the department. For example, at this time JP was asked to re-take the GRE despite his Neurologist statement that it would not be predictive. After taking the GRE, his results were misinterpreted and he was given inappropriate additional undergraduate courses, even though he already had a 3.8 GPA on PhD classes.(JP was already demonstrating PhD success) He was then refused appropriate accommodations from Brenda York and the disability group. Incredibly, it took JP working with two VP's of Student Success several years to finally overrule the disability group's refusals, and even then was again refused appropriate accommodations. During these gaps in accommodations JP had requested medical leave of absences while he worked to get the accommodations he needed. Another example of the harassment from Paxton and the CS department

was their refusal to correct their mis-reading of his graduate transcripts where even the Graduate Dean confirmed he had previously taken Calculus II and should not have to re-take.(the Dean also confirmed he had taken the other undergrad courses pre-req's too)

There has been a pattern of intimidation from Paxton, York, and MSU in general for not providing the appropriate support to JP. MSU unjustifiably kicked JP out of his PhD program with a 3.8 GPA on 45 PhD credits. Per the PhD requirements, by best estimates JP lacked only two remaining classes for completion of his PhD.

A personal note from JP:
Now, I'm not an attorney, but I do recognize those that are supportive, and those that aren't. I have had some great support from some at MSU that recognize my disabilities, and some as described before that don't. Another example is MSU Facilities, those responsible for physical access. Facilities has refused to pay for a new pool lift, even after being shown that one can't get out without two spots. But the MSU gym stepped up to help provide those spots and are attempting to budget the purchase themselves over time. Another example, when MSU Disability Rights refused over those years to give me extra test time or a paid note taker, one of the math professors let me sit in on his class to see if the extra test time would work with a paid note taker. It did work with the help of a paid tutor to go over the notes for an hour after the class. You see I couldn't hear the lectures because I was deaf, and I couldn't see the writing on the board because of my blindness, and I couldn't write very well because of my nerve damaged hands. When Disability Rights finally granted me the extra test time and paid note taker for Linear Algebra(and my Sister paid for the tutor), I got an A-. My professor noted that based on my exams I would have gotten a perfect score on the exams if I hadn't missed seeing some parameters at the end of the sentence.(I can only see three characters at a time) Again, Brenda York refused to give me these same accommodations for the other classes, and Paxton was not happy with my success on Linear Algebra(the only pre-req I had not taken)

I could go on, but the point is I was successful as a paraplegic, blinded, deaf, and hand limited student. Some have helped, others have not, but the bottom line is MSU kicked out a successful disabled student. My hope now is that a jury will understand my situation as delivered from a layman of the law.

I deserved better from MSU, and the system failed me.


DATED this 24th day of August, 2017

Respectively submitted,

Jean Paul Lauren