IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JEAN PAUL LAUREN,<br><br>    Plaintiff,<br><br>vs.<br><br>MONTANA STATE UNIVERSITY,<br>WADED CRUZADO, JOHN<br>PAXTON, and BRENDA YORK,<br><br>    Defendants. | CV 17-62-BU-BMM-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATION |

The above named Defendants have filed a motion to dismiss pro se Plaintiff Jean Paul Lauren's Second Amended Complaint for failure to state claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant Montana State University ("MSU") also moves for partial summary judgment on Lauren's claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Lauren cross-moves for partial summary judgment. For the reasons set forth below, Defendants' motions should be granted, Lauren's cross-motion for partial summary judgment should be denied, and this matter should be dismissed.

I.  **Background**

1

Lauren commenced this action in August 2017, alleging that MSU, John Paxton, and Brenda York failed to make reasonable accommodations for his disabilities while he was a graduate student at Montana State University and did not allow him to complete his Ph.D. studies. (Doc. 1). The Court liberally construed Lauren's pro se pleading as alleging a claim under Title II of the ADA, and ordered Defendants to respond. MSU filed an answer, and Paxton and York moved to dismiss for failure to state a claim on the ground that the ADA does not provide for individual capacity suits against state officials. Because individual defendants are not a proper party to an action under the ADA, the Court recommended that the motion be granted and Lauren's ADA claims against Paxton and York be dismissed. (Doc. 26). The Court also granted Lauren's motion for leave to file an Amended Complaint to assert additional claims against Paxton and York. (Doc. 26).

Before a ruling on the motion to dismiss, Lauren filed an Amended Complaint adding claims against MSU, Paxton, and York "under federal defamation, libel, and slander laws." (Doc. 27, at 2). MSU, Paxton, and York moved to dismiss those newly added claims under Rule 12(b)(6), and MSU filed a motion for summary judgment on Lauren's claims under Title II of the ADA. In addition, Lauren sought leave to file a Second Amended Complaint to add another

defendant. The Court granted Lauren's motion for leave to amend, thereby rendering the motion to dismiss moot.

On May 21, 2018, Lauren filed a Second Amended Complaint adding Waded Cruzado as a fourth defendant and introducing, for the first time, allegations under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1961 et seq. (Doc. 50). Liberally construed, Lauren's most recent pleading alleges claims against MSU under RICO and Title II of the ADA, and defamation claims against the three individual defendants. The Second Amended Complaint also contains allegations of discrimination based on age, race, and veteran status, and cites to 42 U.S.C. Chapter 21 and the Age Discrimination Act of 1975.

Defendants move under Rule 12(b)(6) to dismiss Lauren's claims for defamation, RICO violations, and discrimination based on age, race, or veteran status. Defendants also move to dismiss Lauren's ADA claim to the extent it alleges he was deprived of meaningful access to MSU's facilities while he was a graduate student. To the extent Lauren's ADA claim alleges that MSU failed to provide him with adequate academic accommodations during his studies, Defendants move for summary judgment on statute of limitations grounds. In his response to Defendants' motion to dismiss, Lauren requests "at least a partial

summary judgment" on all of his claims. In light of Lauren's pro se status, the Court construes his request as a cross-motion for partial summary judgment.

## II.   **Legal Standards**

### A.   **Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The Court's standard of review under Rule 12(b)(6) is informed by the provision of Fed. R. Civ. P. 8(a)(2) which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting Rule 8). Although Rule 8(a)(2) does not require "detailed factual allegations," a plaintiff must set forth more than bare allegations that the defendant unlawfully harmed the plaintiff. *Ashcroft*, 556 U.S. at 677-78.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint will survive a motion to dismiss if it alleges facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. But if the complaint "lacks a cognizable legal theory or sufficient facts to support a

cognizable legal theory," then dismissal under Rule 12(b)(6) is appropriate. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Where, as here, the plaintiff is appearing pro se, the court liberally construes the allegations in the complaint. *See e.g. Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *Ortez v. Washington County Oregon*, 88 F.3d 804, 807 (9th Cir. 1996). But even where the plaintiff is proceeding pro se, the complaint should be dismissed if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim."   See *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1997).

### B.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). A movant may satisfy this burden

where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its initial burden with a properly supported motion, summary judgment is appropriate unless the non-moving party designates by affidavits, depositions, answers to interrogatories or admissions on file "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. 317, 324 (1986). The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials" of the pleadings. *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 130, 150 (2000); *Anderson*, 477 U.S. at 249-50. The Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255; *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). When presented with cross motions for summary judgment on the same matters, the court must "evaluate each motion separately, giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nevada v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003).

In general, "pro se litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler,* 790 F.2d 1362, 1364 (9th Cir. 1986). This means that "[p]ro se litigants must follow the same rules of procedure that govern other litigants." *King v. Atiyeh*, 814 F.2d 565, 576 (9th Cir. 1987). Nevertheless, in the summary judgment context, courts are to construe pro se documents liberally and give pro se litigants the benefit of any doubt. *Erickson v. Pardus* 551 U.S. 89, 94 (2007); *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

## III.   Discussion

### A.   Motion to Dismiss

#### 1.   Defamation

The Second Amended Complaint states that "Cruzado, Paxton, and York are being sued under Federal Defamation Laws," but does not identify what that federal law might be. (Doc. 50, at 2). Presumably, Lauren means to allege the tort of defamation.   Under Montana law, defamation occurs through either libel or slander.   Mont. Code Ann. § 27-1-801. "Slanderous words are spoken words, whereas libelous words are written." *Tindall v. Konitz Contracting, Inc.*, 783 P.2d 1376, 1382 (Mont. 1989). The statutes defining libel or slander establish a three-part requirement for the claim. "[F]irst, the publication must be false; second the

7

publication must not be privileged; and third, the publication must be defamatory, in that it exposes the person to 'hatred, contempt, ridicule, or obloquy,' or causes 'a person to be shunned or avoided,' or has a tendency to injury the person in his or her occupation." *Lee v. Traxler*, 384 P.3d 82, 86 (Mont. 2016).

The test for defamation is a stringent one. *McConkey v. Flathead Electric Co-op,* 125 P.3d 1121, 1129 (Mont. 2005). The threshold question "is whether the statements, even if false, are capable of bearing a defamatory meaning." *Chapman v. Maxwell*, 322 P.3d 1029, 1032 (Mont. 2014). For defamatory words to be actionable, they "must be of such a nature that the court can presume as a matter of law that they will tend to disgrace and degrade [the plaintiff] or cause him to be shunned and avoided." *McConkey*, 125 P.3d at 1130. Sarcastic and hyperbolic statements do not satisfy the stringent test for defamation. *McConkey*, 125 P.3d at 1130. Nor do expressions of opinion, which generally "do not carry a defamatory meaning" and so are not actionable." *McConkey*, 125 P.3d at 1130. Whether a statement is defamatory may be decided by the court as a matter of law. *McConkey*, 125 P.3d at 1129.

The Second Amended Complaint does not allege any facts whatsoever in support of Lauren's defamation claim. Lauren's pleading simply states that the individual Defendants are being sued for defamation, but does not identify any

allegedly defamatory statements. It does not identify what was allegedly said or published, by whom, or when. Absent any supporting factual allegations, the Second Amended Complaint fails to state a cognizable claim for defamation against any Defendant.

While the Second Amended Complaint is thus deficient on its face, it refers the reader to "the original 'Complaint" and previous "Amended Complaint' for further detail and history." (Doc. 50, at 4). But as the Court specifically cautioned Lauren in its order granting him leave to amend his complaint for the first time, "[a]n amended complaint supersedes the prior complaint and must be complete in itself, without incorporating by reference any prior or superseded pleading." (Doc. 26, at 3 (citing *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) and *Snyder v. HSBC Bank, USA, N.A.,* 873 F.Supp.2d 1139, 1155 (D. Ariz. 2012)). The Second Amended Complaint thus supersedes Lauren's prior pleadings, and his defamation claim is properly dismissed.

Even if the Court were to consider the allegations in the first two pleadings, Lauren has not stated a claim for defamation. The original Complaint is similar to the Second Amended Complaint in that it does not set forth any factual allegations in support of a defamation claim. The First Amended Complaint provides a little more detail, alleging as follows:

9

Paxton's written statement that "no one in the department would work with [Lauren] going forward" is evidence of 'defamation, libel, and slander', along with Brenda York's statement that [Lauren] "had gotten all of the accommodations he needs." Both Paxton and York intentionally saying [Lauren] could not do the academic work. (when in fact [Lauren] could do the work and was). There were more statements made by Paxton and York and others at MSU also prevented [Lauren] from moving to another academic program. Additionally, there were implied, stated, some written, some verbal made to possible employers and departments both at MSU and other.

(Doc. 27, at 5).

These alleged statements do not satisfy the stringent standard for defamation. To the extent Lauren identifies specific statements he claims were made by individual Defendants, those statements are simply expressions of opinion. As such, they are not actionable as defamation. To the extent Lauren claims the individual Defendants made other unspecified defamatory statements, his allegations are too vague to state a claim for relief. Thus, even considering Lauren's prior pleadings in conjunction with his Second Amended Complaint, he has not stated a claim for relief and his defamation claim should be dismissed.

## 2.   RICO

The Second Amended Complaint states that MSU is being sued for fraud under RICO. Presumably, Lauren is attempting to bring a civil RICO claim under 18 U.S.C. § 1962(c), which provides as follows:

It shall be unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must sufficiently allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005).

The "conduct" element of a RICO claim requires "an element of direction," such that the defendant had "some part in directing [the enterprise's] affairs." *Walter v. Drayson*, 538 F.3d 1244, 1247 & 1249 (9th Cir. 2008). The Second Amended Complaint states that "MSU shows Fraud and a systematic failure to provide accommodations" (doc. 50, at 3), but such allegations are not sufficient to satisfy the "conduct" element of a RICO claim.

Lauren also fails to adequately allege the "enterprise" element of his RICO claim. An "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To satisfy this element, a plaintiff must allege the existence of two distinct entities: (1) a "person" and (2) an "enterprise." *See e.g. Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d

11

1393, 1397 (9th Cir. 1986). Lauren's Second Amended Complaint alleges "Fraud

under the RICO Act" against MSU for apparently engaging in unspecified conduct

for its own benefit, but does not specify both a "person" and a separate

"enterprise." These allegations are not sufficient to satisfy the "enterprise" element

of a RICO claim.

Lauren also fails to adequately allege "racketeering activity" as required to

state a claim under RICO. A "racketeering activity" is an act that is indictable as a

criminal offense under several specific provisions of Title 18 of the United States

Code. 18 U.S.C. § 1961(1). *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th

Cir. 2004) (citing *Schreiber Distributing Company v. Serv-Well Furniture

Company, Inc.*, 806 F.2d 1393, 1399 (9th Cir. 1986)). The only predicate

racketeering activity alleged in the Second Amended Complaint is fraud. Under

Ninth Circuit law, "fraud-based RICO claims may be dismissed if they fail to

satisfy Rule 9(b)'s requirement that fraud claims be plead with particularity."

*Comwest, Inc. v. American Operator Services, Inc.*, 765 F.Supp. 1467, 1476 (C.D.

Cal. 1991) (citing *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392

(9th Cir. 1988)). Here, Lauren does not specify what type of fraud listed in §

1961(1) he is alleging and has not pled with particularity the circumstances

constituting the alleged fraud as required by Fed. R. Civ. P. 9(b).

Because Lauren has not adequately alleged the "conduct", "enterprise", and "racketeering activity" elements of a RICO claim, he fails to state a claim for relief and his RICO claims should be dismissed.

3. ADA

The Second Amended Complaint alleges a claim against MSU under Title II of the ADA.[1] Construed liberally in Lauren's favor, this claim has two components. First, Lauren alleges MSU failed to provide him with adequate academic accommodations while he was pursuing his graduate studies. Second, Lauren alleges he was deprived of access to MSU's facilities while he was a student there.

Defendants do not move to dismiss the first component of Lauren's ADA claim, which is the subject of MSU's pending motion for partial summary judgment. Defendants do, however, move to dismiss Lauren's ADA claim to the

---

[1] Lauren's original Complaint also alleged a claim under Title II of the ADA against the individual Defendants. It is well-established, however, that individual liability is precluded under Title II of the ADA, which means that ADA claims against individual defendants are not cognizable. See e.g. *Heinke v. County of Tehama Sheriff's Dept.*, 2013 WL 3992407, * 7-8 (E.D. Cal. 2013). See also *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002). Thus, even if Lauren did intend for his Second Amended Complaint to assert claims against the individual Defendants under Title II of the ADA, those claims would be subject to dismissal under Rule 12(b)(6) as discussed in the Findings & Recommendation issued on January 29, 2018. (Doc. 26).

extent it alleges he was deprived of access to MSU's facilities. Defendants argue Lauren has failed to provide an adequate short and plain statement of claim showing that he is entitled to relief, as necessary to satisfy Rule 8's notice pleading standards and survive a Rule 12(b)(6) motion to dismiss. The Court agrees.

The Second Amended Complaint alludes to facility access only once, alleging a "failure to provide ADA accommodations & access." (Doc. 50, at 2-3). It does not allege with particularity which areas of MSU's campus fail to abide by the ADA's access standards, how MSU's facilities are not in compliance with the ADA's access standards, when Lauren attempted to access them, how he was deprived of access, or whether the alleged violations are ongoing. The simple allegation that MSU failed to provide ADA "access" is not sufficient to give MSU "fair notice of what the …claim is and the grounds upon which it rests." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). Thus, to the extent Lauren alleges he was deprived of access to MSU's facilities, he fails to state a claim for relief under Title II of the ADA.

### 4.   Other claims

The Second Amended Complaint contains allegations of discrimination based on age, race, and veteran status, and cites to "Title 42, Chapter 21 of the U.S. Code" and the "Age Discrimination Act of 1975." (Doc. 50, at 2).

To the extent Lauren seeks relief under 42 U.S.C., Chapter 21, he fails to specify which particular statute in this chapter provides the basis of his claim. As Defendants correctly point out, if Lauren is attempting to bring a claim under 42 U.S.C. § 1983, he does not identify which specific constitutional rights he has allegedly been deprived of, and does not include any specific factual allegations to support such a claim. To the extent Lauren is seeking relief under 42 U.S.C., Chapter 21, his claim should be dismissed.

The Second Amended Complaint also refers to the "Age Discrimination Act of 1975," which is found at 42 U.S.C. §§ 6101-6107. The only allegations Lauren makes in support of such a claim are that "MSU is being sued for discrimination under Federal Age protection laws" and that his "lawsuit seeks damages for discrimination for…age." (Doc. 50, at 2). This is not sufficient to state a claim for relief.

Next, the Second Amended Complaint mentions "Federal Race protection laws" and refers to "possible race [discrimination] as Grandparents lived on the OK Choctaw Reservation." (Doc. 50, at 2). It further alleges discrimination "due to…veteran status," but provides no additional detail. Lauren's cursory claims of discrimination based on race and veteran status are not supported by any substantive factual allegations or citation to authority, and should be dismissed for

failure to state a claim because they do not satisfy Rule 8's notice pleading requirements.

Finally, Defendants argue that Lauren's age, race, and veteran status discrimination claims must be dismissed for the independent reason that the Second Amended Complaint fails to allege exhaustion of administrative remedies. Lauren's pleading does not allege that he filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and received a right-to-sue letter. A failure to file a charge of discrimination with the EEOC "renders a suit subject to dismissal in the absence of any equitable consideration to the contrary." *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). Because Laruen does not allege that he exhausted his administrative remedies before bringing his discrimination claims, those claims are properly dismissed.

## B.     Motion for Summary Judgment

As set forth in the Second Amended Complaint, Lauren's claim under Title II of the ADA alleges that MSU failed to provide adequate academic accommodations for his disabilities and discriminated against him by dismissing him from the university. Defendants move for summary judgment on the ground that this claim is barred by the statute of limitations.

"Title II of the ADA does not contain an express statute of limitations."

*Sharkey v. O'Neal*, 778 F.3d 767, 770 (9th Cir. 2015). Accordingly, courts must

"borrow the statute of limitations applicable to the most analogous state-law claim,

so long as 'it not inconsistent with federal law or policy to do so.'" *Sharkey*, 778

F.3d at 770 (quoting *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)).

Here, the Montana Human Rights Act's prohibition against discrimination in

education provides the most analogous state-law claim to ADA Title II. Section

49-2-307, MCA, of the Montana Human Rights Act provides in relevant part as

follows:

> It is an unlawful discriminatory practice for an educational institution:
>
> (1) to exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms, conditions, or privileges of the institution because of race, creed, religion, sex, marital status, color, age, physical disability, or national origin or because of mental disability, unless based on reasonable grounds.

The statute of limitations applicable to claims of disability discrimination in

education under the Montana Human Rights Act is generally 180 days "after the

alleged unlawful discriminatory practices occurred or was discovered." Mont.

Code Ann. § 49-2-501(4)(a). But if the underlying conduct is the subject of a

grievance procedure, the claim of disability discrimination must be brought "within

300 days after the alleged unlawful discriminatory practice occurred or was

discovered." Mont. Code. Ann. § 49-2-501(4)(b). Under the holding in *Sharkey*, the 180/300 day limitations period contained in the Montana Human Rights Act applies to Lauren's Title II ADA claim alleging that MSU failed to provide adequate academic accommodations for his disabilities and discriminated against him by dismissing him from the university.

As set forth in the original Complaint filed on August 24, 2017, Lauren's claim under Title II of the ADA alleged:

> This lawsuit is being filed because [Lauren] was not allowed to continue his PhD studies in the fall of 2015 even though he had a 3.8 GPA on 45 PhD credits. Essentially, [Lauren] was not given appropriate accommodations and his disabilities were not understood with MSU making inappropriate requirements. MSU demonstrated incompetence and in some cases animosity towards [Lauren] even though he had demonstrated success in his PhD program.

(Doc. 2, at 2). The First Amended Complaint similarly alleged that "MSU refused reasonable accommodations and delayed [Lauren's] ability to complete his PhD in Computer Science. Finally, MSU refused continuation of his PhD studies in the Fall of 2015 even though he had a 3.8 GPA on 45 PhD credits. (Doc. 27, at 2). Consistent with his prior pleadings, Lauren alleges in his Second Amended Complaint that MSU violated the ADA by dismissing him from the university and denying or delaying the accommodations necessary for him to complete his classes. (Doc. 50, at 2).

MSU has submitted evidence showing that this claim accrued, at the latest, on March 5, 2015, when MSU informed him that he was no longer eligible for full admission to the Ph.D program. In April 2010, Lauren was provisionally granted admission to the Division of Graduate Education at MSU to pursue a Doctoral degree in Computer Science. (Doc. 39, ¶ 2). As part of his provisional admission, MSU required that he successfully complete four specific courses no later than the 2011 summer semester. (Doc. 39, ¶ 2). Lauren later sought and obtained an extension of time, giving him until the end of the 2012 summer semester to complete that coursework. (Doc. 39, ¶ 4). Lauren also sought, unsuccessfully, to have coursework he had completed more than 25 years earlier at Texas A&M applied to MSU's provisional admission requirements. (Doc. 39, ¶5).

In November 2010, Lauren filed a complaint of discrimination with the Montana Human Rights Bureau alleging that that MSU's denial of his request to give him credit for his prior coursework at Texas A&M was an act of discrimination against him based on his age and disability. (Doc. 39, ¶ 6). In May 2011, the Montana Human Rights Bureau issued a final investigative report finding there was no reasonable cause to believe that Lauren had been the subject of any unlawful discrimination. (Doc. 39, ¶6).

Lauren successfully completed the first of his provisional coursework during

19

the 2012 fall semester, and obtained another extension giving him until the 2014 summer semester to complete the rest of his provisional coursework. (Doc. 39, ¶7). In the fall semester of 2013, Lauren enrolled in another required course for the 2013 fall semester, but later requested that the provisional coursework requirement for this particular course be "dropped" because he had not been provided with classroom and testing accommodations in a timely manner. (Doc. 39, ¶9). Lauren was advised in September and December 2013 that the requirement would not be dropped. (Doc. 39, ¶ 10). Lauren pursued an academic grievance, which was denied in January 2014. (Doc. 29, ¶10).

In December 2013, Lauren filed another charge of discrimination with Human Rights Bureau alleging that he had been discriminated against based on his disability because had not received appropriate classroom and testing accommodations. (Doc. 39, ¶ 11). The Montana Human Rights Act issued final investigative report in June 2014, finding there was no reasonable cause to believe that MSU had unlawfully discriminated against Lauren. (Doc. 39, ¶ 11).

In March 2014, Lauren advanced his academic grievance to the Montana Board of Regents and the Commissioner of Higher Education. (Doc. 39, ¶ 12). In February 2015, the Commissioner issued a ruling concluding that the coursework requirements for Lauren's provisional admission into the PhD program were

20

academically reasonable and that he had been provided with appropriate

accommodations for his disability. (Doc. 39, ¶ 12).

On March 5, 2015, the Graduate School and the Department of Computer

Science advised Lauren in writing that it had received the Commissioner's decision

and further advised him as follows:

> Since you have not completed the provisional requirements for full
> admission in the Ph.D. program in Computer Sciences, you are not eligible
> for full admission. As a consequence, you are no longer a graduate student in
> the Computer Science Department at Montana State University.

(Doc. 39, ¶ 13).

Lauren has not come forward with any evidence to counter that presented by

MSU, which demonstrates that all of the events giving rise to Lauren's ADA claim

took place before his graduate student status was terminated in March 2015.

Lauren's ADA claim thus accrued, and the 180/300 day limitations period began to

run, at the latest on March 5, 2015. Because Lauren did not file his original

Complaint until August 2017 – more than two years later – his claim under Title II

of the ADA is time barred.

In his response brief, Lauren takes the position without any citation to

authority that some, unspecified two-year statute of limitations applies to his ADA

claim. (Doc. 51, at 2). But even if a two-year limitations period did apply, the

result would be the same. As set forth above, Lauren's ADA claim accrued no later

than March 2015 and he did not file his complaint in this case until August 2017 – more than two years later.

Lauren also claims that MSU's March 5, 2015, dismissal letter is somehow invalid because he was on a medical leave of absence at that time and university policy prohibits dismissing students on medical leave. Lauren does not identify any university policy prohibiting such dismissals, and MSU has submitted evidence establishing that it does not have a "medical leave of absence" policy that would prohibit it from dismissing a student who is on a medical leave of absence. (Doc. 66-1). Even if Lauren was on a medical leave of absence, it undisputed that MSU informed him on March 5, 2015, that he was being dismissed. Lauren did not filed his original Complaint until more than two years later.

Finally, to the extent Lauren's brief in response to Defendants' motions to dismiss and for partial summary judgment can be construed as a cross-motion for partial summary judgment, that motion should be denied. As discussed above, MSU has established that it is entitled to summary judgment on Lauren's ADA accommodation claim on statute of limitations grounds, and all other claims set forth in the Second Amended Complaint should be dismissed for failure to state a claim for relief.

IV.   **Conclusion**

22

For reasons set forth above,

IT IS RECOMMENDED that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (doc. 64) and Montana State University's Motion for Partial Summary Judgment (doc. 37) be GRANTED, Plaintiff's constructive Cross-Motion for Partial Summary Judgment be DENIED, and this case be DISMISSED.

DATED this 30th day of July, 2018.

Jeremiah C. Lynch
United States Magistrate Judge